IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| ZACHARY ADAM CHESSER, | ) | |
| | ) | Criminal No.  1:10cr395 |
| Petitioner, | ) | |
| | ) | Civil No.      1:15cv1602 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

GOVERNMENT'S CONSOLIDATED RESPONSE TO CHESSER'S MOTIONS

On February 11, 2016, this Court directed the United States to respond to the outstanding

motions in this matter.  This pleading responds to that direction.  In short, all of Chesser's

motions should be denied.

Background

A.      The Charges and the Plea Agreement

On July 23, 2010, Zachary Chesser was arrested on the basis of a criminal complaint

charging him with attempting to provide material support to the designated terrorist group known

as al-Shabaab, in violation of 18 U.S.C. § 2339B.

Charges against Chesser were resolved on October 20, 2010, when  - - pursuant to a

written plea agreement and an incorporated statement of facts - - he pled guilty to a criminal

information charging him with (a) communicating threats, in violation of 18 U.S.C. § 875;

(b) soliciting others to engage in felony crimes that had as an element the use, attempted use, or

threatened use, of violence, in violation of 18 U.S.C. § 373; and (c) attempting to provide

material support to the designated terrorist group known as al-Shabaab, in violation of 18 U.S.C. § 2339B.

Pursuant to the plea agreement, Chesser agreed that he would plead guilty because he was, in fact, guilty of the charges in the criminal information; he agreed that the facts set forth in the Statement of Facts established his guilt beyond a reasonable doubt. Plea Agreement, ¶ 2. In that plea agreement, Chesser agreed that his attorneys provided him with effective assistance of counsel. Plea Agreement, ¶ 3. Pursuant to the plea agreement, Chesser agreed to waive any right to appeal his conviction and sentence "on any grounds whatsoever, in exchange for the concessions made by the United States" in that plea agreement. Plea Agreement, ¶ 6.

Among the concessions made by the United States in that plea agreement, the United States agreed to forego further criminal prosecution of Chesser in the Eastern District of Virginia for the conduct described in the Criminal Information and the Statement of Facts. Plea Agreement, ¶ 10. As explained in more detail below, Chesser knew that, had he declined to enter the plea agreement, he likely would have been charged with offenses in addition to those included in the Criminal Information. As he knew, those additional charges likely would have included (d) the distribution of information regarding the manufacture of explosives, in violation of 18 U.S.C. § 842(p); and (e) soliciting murder, in violation of 18 U.S.C. §§ 373 and 2232 - - and each of those additional charges were punishable by up to 20 years in jail. *See* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody, United States

District Court for the Southern District of Illinois, Case No. 3:13-cv-00456, Docket # 179-2, at p. 33 (hereinafter referred to as "the Illinois Section 2255 Filing").[1]

Further, in consideration for Chesser's agreement, the United States agreed to forego prosecution of his wife for conspiring or aiding and abetting his conduct, so long as she herself pled guilty to a false statements charge.  Plea Agreement, ¶ 11; Chesser's Motion Under Section 2255 (Docket #67), at p. 17-18 ("He pled guilty very reluctantly after his wife was threatened with prosecution"); Chesser's Motion for Further Production of Exculpatory Evidence (Docket #69), at p. 16 ("Chesser thought that she would get 33 years in prison if he did not plead guilty").

At the hearing on Chesser's guilty plea, Chesser stated that he was fully satisfied with the services of his attorney, Michael (now Magistrate Judge) Nachmanoff.  Transcript of Hearing, October 20, 2010, at p. 4.  Chesser stated that he was prepared to plead guilty to the Criminal Information because he was, in fact, guilty.  *Id.*

At the hearing on Chesser's guilty plea, Chesser said that he understood that, as part of his agreement with the government, the government agreed to forego prosecuting his wife for the crime of conspiring or aiding and abetting his own offenses, as long as she pled guilty to a false statement or similar charge within 60 days.  *Id*. at p. 9-10.

      1.    <u>Count 1</u>

On October 20, 2010, at the hearing upon his guilty plea, Chesser said that he understood that Count 1 alleged that, between April 15, 2010, and July 21, 2010, he knowingly and unlawfully transmitted in interstate and foreign commerce communications by internet postings

---

[1] As explained below, the Illinois Section 2255 Filing was filed by Chesser in connection with his suit for access to records allegedly denied him by prison officials.

that contained threats to injure other persons, including individuals referenced as "TP" and "MS" in connection with the broadcast of an episode of the "South Park" television show; and another individual referenced as "JG" in connection with JG's participation in a Facebook group. Transcript of Hearing, October 20, 2010, at p. 11-12.  In response to the Court's question, Chesser said that he understood the elements of the offense charged in Count 1.  *Id*. at 12.

At the hearing, Chesser asserted that he had gone over with his lawyers the facts that were necessary to prove him guilty of Count 1 of the Criminal Information.  *Id*.  He asserted that he had gone over with his lawyers the manner and means of the distribution of the threatening communications that were set forth in the Criminal Information and the Statement of Facts.  *Id*. He told the Court "I agree with all of those statements in the Criminal Information." *Id*. at 12-13.

At the hearing, Chesser admitted that, objectively, his posts were threatening:

> The Court:    And do you agree that in looking at the information that you put out on those websites, and the nature of that information, that it objectively constituted messages to an audience that likely included individuals around the world who were inclined to engage in violent jihad against what they perceived to be the enemies of Islam?
>
> Chesser:    Yes, sir.

*Id.* at 14.

Then, under penalty of perjury, he admitted that, when he made those postings, he understood that they would be perceived as threats:

> The Court:    And also that you understood the messages to constitute requests to attack MS, TP, and JG?
>
> Chesser:    Yes, sir.

*Id*.  In short, Chesser admitted in open court that his postings were objectively threatening, and

4

that he understood that they were threatening when he made them.  At the same time, he admitted that his posts constituted solicitations to murder MS, TP, and JG.

As described in detail in Count 1 of the Criminal Information and in the Statement of Facts, Chesser agreed that he solicited the murder of his fellow citizens because he believed that they had insulted his religion.  He agreed that, in doing so, he solicited violence from an audience that he knew was inclined to engage in violent jihad against those they believed to be the enemies of Islam.  He agreed that, in doing so, he knew that his audience would understand his messages as requests to attack the victims he named, and he knew that his audience was potentially willing and capable to attack those victims.  He agreed that, in doing so, he justified his actions on the grounds that, "[a]s Osama bin Laden said with regard to the cartoons of Denmark, 'If there is no check in the freedom of your words, then let your hearts be open to the freedom of our actions.'"  In other words, Chesser agreed that he solicited the murder of his fellow citizens for engaging in free speech because he believed that he could not convince them to change their minds about his religion by the force of his arguments.

Chesser agreed that he solicited the murder of the writers of the South Park television show, but he also agreed that he solicited the murders of his fellow citizens who drew his wrath because they apparently expressed a desire to participate in "Everyone Draw Muhammad Day" on Facebook.   Chesser agreed that he marked them for death for engaging in free expression that he found insulting as well; these victims included a teenager in Mississippi and a young man from Texas depicted in a photo with his parents and a brother, along with the address of his "possible church/school."  As Chesser pointed out for the killers in his audience on the Ansar AlJihad Network, "Just a place to start."  These facts would have been sufficient to convict

5

Chesser of the violation of Section 373 and 2332 that was *not* brought in return for Chesser's guilty plea.

        2.    <u>Count 2</u>

As Chesser admitted in Count 2, he solicited others to leave suspicious packages in public places to desensitize law enforcement authorities to the threat posed by such packages. He admitted that he did so with the explicit goal of hindering authorities from protecting his fellow citizens from terrorist bombs. He agreed that he had openly explained that, after law enforcement had become sufficiently "desensitized" to the possible danger of such packages, real explosives could then be substituted. He agreed that, as he explained to an audience that he believed was interested in killing his fellow citizens, those real explosives could then explode upon being discovered by a law enforcement officer, with the result "[b]oom! No more kuffar."

As Chesser admitted, he posted on the internet information pertaining to the manufacture and use of explosives and weapons of mass destruction, with the intent that such information be used against civilians, law enforcement authorities, and the military forces of the United States in America and overseas. He agreed that, with the same intent, he posted the TSA manual setting forth procedures used to prevent the smuggling of explosives and weapon onto commercial airplanes. These facts would have been sufficient to convict Chesser of the violation of Section 842(p) that *not* brought in return for Chesser's guilty plea.

        3.    <u>Count 3</u>

As Chesser admitted in Count 3, he attempted to provide material support to a designated terrorist organization. He agreed that he attempted to travel to Somalia to fight for an organization that he knew was designated by his country as a terrorist organization, and that he

also knew considered his country an enemy.  Indeed, he agreed that, in doing so, he brought his infant son with him as "cover."  He agreed that this attempt was not an isolated or uncharacteristic act; he agreed that, instead, it was undertaken as part of a consistent and longstanding course of conduct that included exhorting others to raise children to support al-Qaeda, help the mujahideen and fight against "disbelievers," as well as distributing the speeches of terrorist Al-Awlaki's calling for jihad against the United States, and posting on-line the al-Qaeda manual - - including "Guidelines for Beating and Killing Hostages" - - for the explicit purpose of aiding would-be jihadis around the world.

      B.    <u>Sentencing</u>

The statutory maximum period of incarceration for Count 1 was five years.  The statutory maximum for Count 2 was ten years, and the statutory maximum for Count 3 was 15 years.  The statutory maximum period of incarceration for each of the charges that were *not* brought against him in return for his pleas of guilty to the charges in the Criminal Information - - the distribution of information regarding the manufacture of explosives, in violation of 18 U.S.C. § 842(p), and soliciting murder, in violation of 18 U.S.C. §§ 373 and 2232 - -  was 20 years.

On February 24, 2011, this Court sentenced Chesser to 60 months of incarceration on Count 1 for communicating threats; 120 months of incarnation on Count 2 for soliciting violent or threatening conduct; and 120 months of incarceration on Count 3 for the charge of material support to a designated terrorist organization.  The periods of incarceration were directed to run consecutively for a total period of 300 months - - 25 years.

As noted above, Chesser waived his right to appeal through his plea agreement.  In fact, he filed no appeal.

7

On May 13, 2013, Chesser filed a complaint in the United States District Court for the Southern District of Illinois for alleged violations of his constitutional rights by persons acting under the color of federal authority. *Chesser v. Rivas et al*, No. 3:13cv00456 (Southern District of Illinois), Docket #1. In the complaint, Chesser raised more than 20 claims against fourteen defendants. *See Memorandum and Order*, June 12, 2013, *Chesser v. Rivas et al*, No. 3:13cv00456 (Southern District of Illinois), Docket #8.

Of particular relevance here, on July 27, 2015, Chesser filed a pleading in opposition to a motion for partial summary judgment. *Chesser v. Rivas et al*, No. 3:13cv00456 (Southern District of Illinois), Docket # 179. To support his position, and to show the seriousness of his intent to file a Section 2255 petition in the Eastern District of Virginia, Chesser filed in the Illinois court what he claimed was a draft of the petition that he intended to file in the Eastern District of Virginia. *Chesser v. Rivas et al*, No. 3:13cv00456 (Southern District of Illinois), Docket # 179-1 (Declaration of Chesser); Docket # 179-2 (Section 2255 petition); Docket # 179-3 (Declaration of Chesser). [2]

On June 9, 2015, Chesser moved this Court to order the Federal Public Defender to produce his case file, Docket # 53, and for an order to seal an exhibit. Docket # 55. On June 30, 2015, this Court granted those motions. Docket # 56. On August 4, 2015, Chesser moved to seal. Docket # 58. That motion was denied on November 6, 2015. Docket #65. On September 1, 2015, Chesser moved for an order to show cause. Docket #60. That motion was denied on

---

[2] For the Court's convenience, we file as attachments to this pleading the version of the Section 2255 petition that Chesser filed in Illinois, as well as his declarations accompanying it.

November 6, 2015.  Docket #65.  On November 2, 2015, Chesser moved for leave to file without a standard form.  Docket #64.  That motion was granted on November 6, 2015.  Docket #65.

On November 18, 2015, Chesser moved this Court to order the warden of Chesser's prison to allow Chesser to use his electronic discovery and pleadings in a Section 2255 pleading. Docket #66.   On November 30, 2015, Chesser filed a motion to vacate, set aside, or correct his sentence under Section 2255.  Docket #67.  That same day, he moved for leave in advance to amend or supplement his motion under Section 2255 in case the Court were to rule against him on the basis of what he already filed.  Docket #68.  On January 20, 2016, Chesser moved for the production of exculpatory evidence.  Docket #69.

By Order of February 11, 2016, this Court directed the United States to respond to the outstanding motions.  Docket #72.  By our count, the outstanding motions are docket items 66, 67, 68, and 69.  For the reasons set forth below, each should be denied.

<u>Argument</u>

I.       <u>The Law of Section 2255 Petitions</u>

A petitioner attacking his conviction or sentence pursuant to 28 U.S.C. § 2255 bears the burden of proving that at least one of four grounds justify relief:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  None of the first three grounds are raised in Chesser's petition.

The catch-all fourth category of non-jurisdictional, non-constitutional errors are cognizable under § 2255 only where the alleged error presents either a fundamental defect which

inherently results in a "complete miscarriage of justice," an omission "inconsistent with the rudimentary demands of fair procedure," or other exceptional circumstances that make the need for remedy apparent.  *See States v. Vonn*, 535 U.S. 55, 64 (2002).  Although Chesser bases his petition on this category, he fails to show an error that would fit within it.

A Section 2255 motion "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice.  *United States v. Frady*, 456 U.S. 152, 165-67 (1982). As noted above, Chesser waived appeal in his plea agreement, so his claims that could have been brought in an appeal of his conviction are procedurally defaulted.

An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel.  As a result, a claim of constitutionally ineffective assistance of counsel is the only claim that Chesser can bring today.

Chesser bears the burden of proof by a preponderance of the evidence.  *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

II.      The Section 2255 Motion Should Be Denied

Chesser's Section 2255 motion is based on the argument that his guilty plea for transmitting threats should be vacated because he never admitted facts sufficient to meet the definition of a "threat" for purposes of Section 875, as determined by *Elonis v. United States*, 135 S.Ct. 2001 (2015).  To the contrary, he admitted such facts in response to this Court's questions when he entered his guilty plea on October 20, 2010.

*Elonis* does not affect Chesser's guilty plea.  Even if it did, however, it would not matter. Chesser's guilty plea foreclosed collateral review of the convictions that he admitted as part of a

plea bargain in the course of which the government dropped other serious charges of which he was not innocent.  Notwithstanding the lack of factual foundation for his argument, Chesser's motion is without merit because a) his guilty plea is final; b) he cannot show actual innocence of the Section 875 count; c) he cannot show actual innocence of the other criminal charges that were *not* brought in return for his agreement to plead guilty to the charges in the Criminal Information; and d) he cannot satisfy the legal test for ineffective assistance of counsel.

> A.    Chesser's Guilty Plea Foreclosed Collateral Review of the
> Convictions that He Admitted as Part of his Plea Bargain

Despite Chesser's arguments, this Court need not consider whether his admitted conduct constituted an offense under Section 875 based on *Elonis*.  As part of his guilty plea, Chesser admitted in 2010 in writing and again in open Court that he communicated threats in violation of Section 875.  He had the opportunity to challenge the application of Section 875 to his conduct in 2010 but decided to plead guilty to the charge instead.  As part of his guilty plea agreement, he waived any right to challenge the applicability of that charge to his conduct.

Chesser's guilty plea to the charged offenses is final.  Section 2 of the Plea Agreement specifically states that Chesser pled "guilty because the defendant [was] in fact guilty of the charged offense.  The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt."  Even if the facts contained in the Statement of Facts somehow were insufficient to support a conviction for 18 U.S.C. § 875 in light of *Elonis*, Chesser still would be entitled to no relief because he pled guilty and waived any appeal.

11

Plea agreements work "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).   Because the need for finality has "special force with respect to convictions based on guilty plea," a guilty plea may be attacked on collateral review only in "strictly limited" circumstances.  *Bouseley v. United States,* 523 U.S. 614, 621 (1998).  Thus, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id*.

On collateral review, claims that were not raised on appeal are deemed waived, and procedural default operates to bar such claims, unless the movant can establish cause and prejudice or, in the alternative, actual innocence.  In this case, Chesser waived his appeal as part of the plea bargain that he reached.  As a result, he waived any challenge years ago to the application of Section 875 to his conduct.

A guilty plea is more than a mere confession; a defendant who pleads guilty admits not only that he committed the acts described in the indictment but also that he is guilty of the substantive offense.  *United States v. Broce*, 488 U.S. 563, 570 (1989).  Having already admitted guilt of the substantive crime and affirmed as true the underlying facts of the conviction, a defendant can no longer re-argue the facts.

As a result, when a defendant files a Section 2255 motion to challenge the validity of a conviction pursuant to a guilty plea, "the inquiry is ordinary confined to whether the underlying plea was both counseled and voluntary.  *Broce*, 488 U.S. at 569.  This rule holds even when the law later changes in the petitioner's favor, as "the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompanies a guilty plea."  *United States v. Archie*, 771 F.3d 217, 222 (4th Cir. 2014).  Such post-guilty plea relief due to an asserted

12

beneficial change in law is precisely what Chesser is seeking; *Archie*, alone, requires that his motion be denied.

Chesser's situation is different from that of a defendant who was convicted at trial on the basis of incorrect instructions; at the time of his guilty plea, Chesser *admitted* that he transmitted threats in violation of 18 U.S.C. § 875.  The Criminal Information specifically alleged that, between April 15, 2010 and July 21, 2010, he knowingly and unlawfully transmitted in interstate and foreign commerce communications by Internet postings containing threats to injure TP, MS, and JG.  In turn, the Statement of Facts provided that "The parties stipulate that the allegations in the Criminal Information . . . are true and correct."  *See* Statement of Facts at 1; *see also id*. at 14 ("The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.")

Chesser's situation also is different from that of defendants whose sentences are based on statutes that have been declared to be unconstitutionally vague or otherwise invalid.  *See, e.g., Johnson v. United States*, 135 S. Ct. 2551 (June 26, 2015)*.  Here, Section 875 remains valid; it is only an interpretation of that statute that has changed.  As a result, *Archie* requires that Chesser's petition be dismissed.

     B.  <u>Chesser Is Unable to Show Actual Innocence of the Section 875 Charge</u>

To attack a sentence via Section 2255(h), the law must have changed "such that the conduct of which the prisoner was convicted is deemed not to be criminal;" *i.e.,* a defendant must show actual innocence under the change in law.  *In re Jones*, 226 F.3d 328, 334 (4th Cir. 2000).  In this case, however, Chesser was not "innocent" of anything.

In *Elonis v. United States*, 135 S. Ct. 2001 (2015), the Supreme Court held that 18 U.S.C. § 875(c), prohibiting the transmission in interstate commerce of a threat to kidnap or injure, does not apply to negligent conduct. Rather, Section 875(c) requires proof at least that the defendant was aware of the threatening nature of the communication.

In *Elonis*, the Court rejected the defendant's contention that the definition of the term "threat" itself required proof of the defendant's intent to threaten. *Id*. at 2008. In short, prosecutors can prove the intent element of Section 875(c) by showing that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 135 S. Ct. at 2012. [3]

Regardless of Chesser's incredible denial today that he transmitted communications about MS, TP, and JG for the purpose of issuing threats, he already admitted to this Court that he understood that his communications would be seen as threatening. On October 20, 2010, Chesser explicitly *admitted* that he was aware of the threatening nature of the communications. Under penalty of perjury, Chesser told this Court that, when he posted the communications at issue, *he knew that those posts would be perceived as threats*:

> The Court: And do you agree that in looking at the information that you put out on those websites, and the nature of that information, that it objectively constituted messages to an audience that likely included individuals around the world who were inclined to engage in violent jihad against what they perceived to be the enemies of Islam?
>
> Chesser: Yes, sir.

---

[3] Pursuant to *Elonis, recklessly* making threatening communications probably also is sufficient for culpability under Section 875. *Elonis*, 135 S. Ct. at 2015 (Alito, concurring).

> The Court:    *And also that you understood the messages to constitute requests to attack MS, TP, and JG?*
>
> Chesser:      Yes, sir.

Transcript of Hearing, October 20, 2010, at p. 14 (emphasis added).  In light of that admission, the requirements of *Elonis* are easily satisfied.

In any event, there should be no dispute that, in 2010, Chesser *wanted* his communications to be seen as threatening.  The Statement of Facts filed in *United States v. Jesse Curtis Morton*, Case no, 1:12cr35 describes a phone call between Chesser and Morton on April 21, 2010, that was recorded by the government.  In that phone call, Morton approved of Chesser's plan to post the "Clarification Statement" about MS and TP on a particular website because, in Chesser's words, finding it on that website would "scare the kuffar."   Morton Statement of Facts, at Paragraphs 19 and 20.[4]

Indeed, the Morton Statement of Facts is replete with evidence that the Revolution Muslim organization that Chesser joined in January 2010 was notorious precisely for attempting to intimidate those whom Chesser and Morton saw as enemies of Islam.  As noted in Paragraphs 4 and 8 of the Morton Statement of Facts, CNN broadcast an interview of Morton in November 2009, in which Morton was asked "You're commanded to terrorize the unbelievers?" and Morton responded "The Koran says very clearly in the Arabic language … this means 'terrorize them.'  It's a command from Allah."  Just weeks after that interview aired, Chesser joined Morton at Revolution Muslim.

---

[4]  For the convenience of the Court, a copy of the Morton Statement of Facts is attached as an exhibit to this pleading.

Chesser could be innocent of Count 1 only if he truly lacked any intent to threaten MS, TP, or JG, and did not understand that his posts would be perceived as threatening.  As described above, that obviously is not the case.  His argument that his "case presents one of the most astounding cases of coincidence a court is ever likely to see,"  Chesser's Section 2255 Petition(filed as an Exhibit in Illinois), Docket # 179-2, at p. 30, is not persuasive; the threatening nature of his posts was intended, and not accidental.

In short, the evidence is clear that Chesser knew that his conduct would be perceived as threatening.  Regardless of whether the Statement of Facts contained facts establishing that Chesser intended his communications as threats, he certainly knew that they would be perceived as threats.  As a result, *Elonis* can have no effect on his guilty plea.

### C.   Chesser is Precluded from Relief Because He Cannot Show Actual Innocence of Serious Charges That Were Dropped in Exchange for His Guilty Plea

Regardless of whether Chesser's admitted conduct constituted an offense under Section 875 even after *Elonis* - - and regardless of whether Chesser defaulted his challenge to the scope of Section 875 by pleading guilty - - Chesser is precluded from relief because he cannot show actual innocence of serious charges that were dropped in exchange for his guilty plea.  After all, Chesser pled guilty to a violation of Section 875 in his Criminal Information in exchange for the government's agreement to forego charges against him (and his wife) that were even more serious than the Section 875 charge that was the basis of the Section 875 charge that he challenges now.  As a result, to obtain relief now, Chesser would have to show that he (and his wife) was actually innocent of those dropped charges as well - - but that he cannot do.

16

Actual innocence means factual innocence, not merely the legal insufficiency of a conviction or sentence, and where the Government has foregone more serious charges in the interest of a plea bargain, the movant must show actual innocence with respect to those charges as well. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999).

Accordingly, to avoid a miscarriage of justice, a petitioner must establish his actual innocence not only as to forgone charges that are more serious than the challenged charge, but also as to forgone charges that are *as* serious as the challenged charge. This rule takes into account the probability that the government would not have dropped good counts in plea negotiations if it had known that the remaining count was invalid, combined with the probability that the defendant likely would not have escaped punishment if the good counts had not been dismissed.  If the good counts were as serious as the invalid count, then the defendant would have incurred at least as heavy as a punishment if the government had gone forward on the good counts as he did by pleading to the charge later determined to be invalid.  *Lewis v. Peterson*, 329 F.3d 934, 936-37 (7th Cir. 2003). *See also United States v. Caso*, 723 F.3d 215, 222 (D.C. Cir. 2013) ("the likely rationale for the *Bousley* rule supports requiring petitioners to show their innocence of equally serious charges.  The applicability of that rule, alone, requires the denial of Chesser's petition.

Other charges that were dropped in exchange for Chesser's guilty plea were at least as serious as the Section 875 offense.  Chesser concedes that, in exchange for his guilty plea, the United States dropped the charge for the dissemination of information regarding the manufacture of explosives, in violation of 18 U.S.C. § 842, as well as the charge for the solicitation of murder,

in violation of 18 U.S.C. §§ 373 and 2332 – and that the facts supporting those counts remained

in the Statement of Facts incorporated into his plea agreement.

In Chesser's own words:

> Chesser was originally accused of distributing explosives information in
> violation of 18 U.S.C. § 842(p)(2), Doc. 1, but this was withdrawn. . . .
> Chesser believed he was still facing this charge when he pled guilty . . .
> [t]here can be no doubt that the threat of this charge weighed heavily on
> Chesser's decision to plead guilty. . . .  Chesser erroneously believed he
> was facing solicitation of murder charges which added 60 years to his risk
> calculus.

Illinois Section 2255 Filing, at 33-34 (Docket 179-2).  Chesser was mistaken about being

charged originally with a violation of Section 842(p), but he clearly understood that he was still

facing that charge - - as well as the solicitation to murder charge - - when he entered his guilty

plea.  He admitted that his attorneys "showed him an email from his prosecutor listing the

charges Chesser thought were in his deal, saying that the prosecutor knew he could not convict

Chesser of everything, but that he would convict him of a number of charges."  *Id*. at 45-46.

As Chesser explained in a declaration he filed in connection with the Illinois litigation - -

and citing the Illinois Section 2255 Filing - - "Chesser received immunity from 67.5 years of

charges by pleading guilty."  Case No. 3:13-cv-00456, Doc. 179, at 3.  According to Chesser - -

and again citing his plea agreement - - Chesser wrote that "I believe that I have an almost

surefire 2255 I could file, but I am concerned about reprosecution as to two sections of my deal .

. . indicate this could be a breach of my agreement. I could be facing about 100 years of

charges."  Doc. 179-1, at 1-2.  In short, there is no dispute that, in return for his guilty plea,

Chesser gained the benefit of not being prosecuted on other, very serious, charges.

18

Chesser cannot establish innocence of the 18 U.S.C. § 842 charge; after all, the underlying facts for a conviction on such charge remained in his Statement of Facts. Similarly, Chesser cannot establish innocence of the solicitation to commit murder charge in violation of 18 U.S.C. §§ 842 and 2332, because the underlying facts regarding soliciting murder remained in his Statement of Facts as well.

Finally, Chesser cannot establish the innocence of his wife with respect to aiding and abetting an attempt to provide material support to terrorists, in violation of 18 U.S.C. §§ 2339B and 2. As noted above, one of the concessions that Chesser obtained for his plea agreement was that his wife would not be prosecuted for her assistance to him in his attempt to travel to Somalia to provide material support to al-Shabaab.

Yet, in her own plea agreement, his wife agreed that Chesser should bring their infant son with him to Somalia because doing so would tend to protect Chesser himself. *United States v. Proscovia Nzabanita,* Crim. No. 1:10cr394, Docket #6.[5] Inasmuch as a very serious charge was dismissed against Chesser's wife in return for his guilty plea, he cannot attack his conviction, by the logic of the *Bousley,* because he cannot establish his *wife's* actual innocence, either.

D.      *Elonis* is Inapplicable to Count 2

Pursuant to his plea agreement, Chesser pled guilty to Count 2 of the Criminal Information, which charged him with soliciting others to threaten terrorist attacks against railroad systems and mass transportation systems. Chesser argues that *Elonis* undercuts his guilty plea to that count as well. Notwithstanding the ineffectiveness of his *Elonis* argument with respect to his conviction for communicating threats in violation of Section 875, it is

19

completely inapplicable to his conviction for soliciting others to threaten attacks, in violation of Section 373.  After all, whether the individuals that Chesser solicited intended their own communications to be threats is irrelevant to whether Chesser solicited them to make threats in the first place.  Inasmuch as he admitted that he solicited them to make threats, he had the requisite *mens rea* for conviction on Count 2.

E.     Chesser Cannot Show Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Chesser must show both that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first prong of the *Strickland* test addresses a counsel's professional competence. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.*  To meet this element, a defendant must demonstrate that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," *i.e.*, "prevailing professional norms."  *Id.* at 688.

When a reviewing court makes this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  *Id.* at 689. *See also United States v. Terry*, 366 F.3d 312, 316–18 (4th Cir. 2004).  In assessing whether a defendant has overcome this presumption, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

---

[5]  A copy of the Statement of Facts for Nzabanita is attached to this pleading.

A movant can show prejudice when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 694.  A defendant who pled guilty, as Chesser did, must meet a heightened burden of proving prejudice by showing that "but for the attorney's errors, it is reasonably probable that the defendant would have chosen to face trial rather than plead guilty." *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007).

Furthermore, such movants "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  In making this showing, Chesser's "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts."  *United States v. Fugjt*, 703 F.3d 248, 260 (4th Cir. 2012).

The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S  at 689-90.  Further, the reasonableness of an attorney's actions often depends on "informed strategic choices made by the defendant and on information supplied by the defendant."  *Id*. at 691.  The Fourth Circuit defines effective assistance of counsel as that which is "within the range of competence demanded of attorneys in criminal cases." *Bell v. Evatt*, 72 F.3d 421, 427 (4th Cir. 1995).

To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   In other words, a defendant must affirmatively prove prejudice that is so serious as to have deprived him of a fair trial, the result of which is unreliable. *Id*. at 693.

The Fourth Circuit has labeled these two elements of the *Strickland* test as the "performance prong" and the "prejudice prong." *Fields v. Attorney Gen. of Md*., 956 F.2d 1290, 1297 (4th Cir. 1992). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *Fields* 956 F.2d at 1297. In any event, the burden of proof lies with the defendant as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

## 1.   Chesser Cannot Establish the Performance Prong

Chesser cannot establish the "performance prong" because he cannot prove that his defense counsel did not act properly and make recommendations based on all of the facts of the case. As Chesser admitted in the Illinois Section 2255 Filing, he entered the plea agreement in return for the government's dropping of the Section 842 charge, the solicitation of murder charge, and the material support charge against his wife. Negotiation of an agreement that obtained those benefits manifestly could not be deficient.

In essence, Chesser argues that he received ineffective assistance of counsel because his lawyers failed to foresee that the Supreme Court would narrow the scope of communications that constitute threats under Section 875. Notwithstanding any other reason why his argument is unpersuasive, it simply is not the case that a defense attorney's failure to anticipate that the

Supreme Court will cut back on the reach of the statute amounts to deficient representation. *See, e.g., United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) ("we have repeatedly held that 'there is no general duty on the part of the defense counsel to anticipate changes in the law'").

As noted above, on October 20, 2010, Chesser *admitted* that he knew that his posts would be perceived as threats.  In the face of that admission, there was no reason for Chesser's defense counsel even to contemplate whether the Supreme Court in *Elonis* would later rule that one could not be convicted for negligently making communications that objectively were threatening.

2.   Chesser Cannot Establish the Prejudice Prong

As noted above, Chesser was not prejudiced by his counsel's failure to foresee *Elonis* because he would have been convicted of the Section 875 count anyway even under *Elonis*.  In any event, had he declined to enter the plea agreement, he and his wife likely would have been convicted of other charges that were even more serious.  Finally, the sentence he would have received would not have been any more favorable.  Even without consideration of Count 1 (or even Count 2), the sentencing guidelines range would have remained the same.

Without Count 1, the combined statutory maximum sentence of incarceration would have remained 25 years.  Inasmuch as Chesser's actual sentence was still within the statutory maximum of Counts 2 and 3 alone – and the application of the sentencing guidelines would have stayed the same regardless of the conviction on Count 1 - - Chesser cannot show prejudice from his entry of a guilty plea to Count 1.  In other words, the sentence that Chesser actually received is within the statutory maximum of the two remaining counts, so he would be entitled to no relief even if Count 1 were to be dismissed.  This is true because on resentencing, the Court could sentence Chesser to the same 25 years.

"Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." *Fugit*, 703 F.3d at 260.  Here, Chesser clearly "reaped advantage from the purchase"; he stands convicted of three counts as opposed to five counts, and he obtained a sentencing cap of 30 years instead of possible life in prison. Moreover, he obtained favorable treatment for his wife as well.  Accordingly, he may not use what he believes is the benefit of hindsight to establish that he would not have accepted the benefits of pleading guilty but for his counsel's alleged ineffective assistance, and that such decision would have been an objectively reasonable one. Accordingly, his ineffective assistance of counsel claim should be dismissed with prejudice.

In sum, Chesser has failed to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if Chesser could demonstrate some deficiency in his defense attorneys' performance – which he has not – he has not established that the result of his case would have been different. Accordingly, Chesser's claim of ineffective assistance of counsel must fail.

III.    Motion to File an Amended Petition Is Not Ripe

In a separate motion (Docket #68:  "Motion for Leave in Advance to Amend or Supplement Motion Under 28 U.S.C. § 2255"), Chesser sought leave to amend or supplement this motion if what he already filed proved insufficient to gain the relief he sought.  That motion is not ripe.  Chesser is free to include such arguments and authority as he may have in his reply to this pleading. In the event that the Court then denies his petition, Chesser should follow the rules set forth for successive petitions under Section 2255.

IV.     The Motion for Production of Evidence (Docket #69)

Chesser is not entitled to any further discovery or production of materials from the United States.  As part of his plea agreement, Chesser waived "all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

Moreover, as a result of Chesser's guilty plea, the criminal case arising from that prosecution is over, and – other than Chesser's pending motions – there is now in this Court no litigation between Chesser and the United States. As a result, Chesser is no longer entitled to the production from the United States of any discovery materials.

As we have previously noted in response to Chesser's prior Show Cause Order, the United States Attorney's Office file for Chesser's case was closed years ago and, in light of his guilty plea, the discovery materials were not retained before the file for that case was sent off to archives.  When the case was pending in 2010, the United States disclosed discovery materials to Chesser through his counsel; we understand that Chesser obtained that discovery from the Public Defender's Office.  At this point, Chesser is not entitled to seek additional information from the United States.  Accordingly, Chesser's Evidence Motion should be denied.

V.      The Motion to Order the Warden

Chesser's motion regarding his access to and use of electronic discovery and other materials received at his correctional facility (Docket # 66) should be dismissed for lack of venue.  Inasmuch as, in his "Warden Motion," Chesser challenges the conditions of his

25

confinement, his claim is not one that can be brought in a habeas corpus petition.  *See, e.g., Hawkins v. Perdue*, 2014 WL 1962216, at *2 (N.D.W.Va. May 15, 2014) ("district courts within this circuit have staked out their place on the spectrum by demonstrating a consistent reluctance to permit prisoners challenging the conditions of their confinement to proceed under § 2241"). *See also Bailey v. Masters*, 2015 WL 6874662 (S.D. W.Va.  October 8, 2015); *Warman v. Philips*, 2009 WL 2705833, *3 (N.D.W.Va., Aug. 25, 2009);  *Mendez v. Beeler*, 2005 WL 4753402, *1 (E.D.N.C., May 10, 2005).

To the extent that "a federal prisoner wishes to challenge his conditions of confinement, rather than the fact or duration of his confinement, his remedy, if any, should be brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)."  *Kissi v. Clement*, 2009 WL 2358364 (E.D. Va. July 29, 2009) (Lee, J.).  *Accord McCain v. Garrity*, 2002 WL 32362032, *2 (E.D.Va., July 16, 2002) (Payne, J.) (a challenge to a prisoner's conditions of confinement properly lies in a § 1983 civil rights action or a *Bivens* action rather than a writ of habeas corpus).

Venue for a *Bivens* challenge, however, exists in the district of confinement and not the district of sentencing (unless, naturally, the district of confinement is also the district of sentencing).  Venue in a *Bivens* action is determined by reference to 28 U.S.C. § 1391(b), which states that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...."  *Stafford v. Briggs*, 444 U.S. 527, 544 (1980) (venue of Bivens actions governed by § 1391(b).

The alleged action by the warden of which Chesser complains occurred in the District of Colorado.  As a result, venue for this action does not lie in the Eastern District of Virginia, and instead appears to be appropriate in the District of Colorado.  *See Byrd v. United States,* 2010 WL 4922519 (E.D. Va. Nov.29, 2010) (Hilton, J.); *Royer v. Federal Bureau of Prisons*, 2010 WL 4827727 (E.D. Va. Nov. 19, 2010) (Brinkema, J.).

<u>Conclusion</u>

For the above reasons, Chesser's motions should be denied.

Respectfully submitted,

Dana J. Boente
United States Attorney

John D. Filamore
Special Assistant United States Attorney


_____/s_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th of April 2016, I mailed a hard copy of the foregoing by

First Class mail to:

> Zachary Adam Chesser
> Reg. No. 76715-083
> USP Florence ADMAX
> P.O. Box 8500
> Florence, CO 81226


> _____/s_____
> Gordon D. Kromberg
> Assistant United States Attorney
> Virginia Bar No. 33676
> Assistant United States Attorney
> Attorney for the United States
> 2100 Jamieson Avenue
> Alexandria, VA  22314
> (703) 299-3700
> (703) 837.8242 (fax)
> gordon.kromberg@usdoj.gov

28