IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.  1:10cr395 |
| v. | ) | |
| | ) | |
| ZACHARY ADAM CHESSER, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S OPPOSITION TO CHESSER'S MOTION

On March 6, 2026, this Court directed the United States to respond to Zachary Chesser's latest 2255 motion.  Chesser's motion essentially is an attempt to raise again arguments that were considered and rejected by Judge O'Grady in the context of Chesser's previous 2255 motion. Dkt #88.  This one too should be denied.

Background

A.      The Charges and the Plea Agreement

On July 23, 2010, Chesser was arrested on the basis of a criminal complaint charging him with attempting to provide material support to the designated terrorist group known as al-Shabaab, in violation of 18 U.S.C. § 2339B.

Charges against Chesser were resolved on October 20, 2010, when  - - pursuant to a written plea agreement and an incorporated statement of facts - - he pled guilty to a criminal information charging him with (a) communicating threats, in violation of 18 U.S.C. § 875; (b) soliciting others to engage in felony crimes that had as an element the use, attempted use, or

threatened use, of violence, in violation of 18 U.S.C. § 373; and (c) attempting to provide material support to al-Shabaab, in violation of 18 U.S.C. § 2339B.  Dkt. #30.

Pursuant to the plea agreement, Dkt. #31 ("Plea Agreement"), Chesser agreed that he would plead guilty because he was, in fact, guilty of the charges in the criminal information (Dkt. #28); he agreed that the facts set forth in the Statement of Facts (Dkt. #32) established his guilt beyond a reasonable doubt.  Plea Agreement, ¶ 2.  Pursuant to the plea agreement, Chesser agreed to waive any right to appeal his conviction and sentence "on any grounds whatsoever, in exchange for the concessions made by the United States" in that plea agreement.  *Id.* at ¶ 6.

Among the concessions made by the United States in that plea agreement, the United States agreed to forego further prosecution of Chesser in the Eastern District of Virginia for the conduct described in the Criminal Information and the Statement of Facts.  *Id.* at ¶ 10.  As explained in more detail below, Chesser knew that, had he declined to enter the plea agreement, he likely would have been charged with offenses in addition to those included in the Criminal Information.  As he knew, those additional charges likely would have included the distribution of information regarding the manufacture of explosives, in violation of 18 U.S.C. § 842(p); and soliciting murder, in violation of 18 U.S.C. §§ 373 and 2232 - - and each of those additional charges were punishable by up to 20 years in jail.  Dkt. #88, at 3-4.

Further, Chesser said that he understood that, in consideration for his agreement, the United States agreed to forego prosecution of his wife for conspiring or aiding and abetting his conduct, so long as she herself pled guilty to a false statements charge.  *Id.* at 9-10; Plea Agreement, ¶ 11.

2

At the hearing on his guilty plea, Chesser stated that he was pleading guilty to the Criminal Information because he was, in fact, guilty. Dkt #73 at 4; Dkt. #88, at 4.

     1.     <u>Count 1</u>

At the hearing upon his guilty plea, Chesser said that he understood that Count 1 alleged that he knowingly and unlawfully transmitted over the internet communications that contained threats to injure other persons, including individuals referenced as "TP" and "MS" in connection with the broadcast of an episode of the "South Park" television show; and another individual referenced as "JG" in connection with JG's participation in a Facebook group. Dkt #73 at 11-12.

At the hearing, Chesser admitted that, objectively, his posts were threatening:

> The Court:    And do you agree that in looking at the information that you put out on those websites, and the nature of that information, that it objectively constituted messages to an audience that likely included individuals around the world who were inclined to engage in violent jihad against what they perceived to be the enemies of Islam?
>
> Chesser:    Yes, sir.

*Id.* at 14; Dkt. #88, at 4-5.

Then, under penalty of perjury, he admitted that, when he made those posts, he understood that they would be perceived as threats, and that they constituted solicitations to murder MS, TP, and JG:

> The Court:    **And also that you understood the messages to constitute requests to attack MS, TP, and JG?**
>
> Chesser:    **Yes, sir.**

*Id.* (emphasis added).

In short, Chesser admitted in open court that his postings were objectively threatening, and that he understood that they were threatening when he made them.

As described in detail in Count 1 of the Criminal Information and in the Statement of Facts, Chesser agreed that he solicited the murder of his fellow citizens because he believed that they had insulted his religion.  He agreed that, in doing so, he solicited violence from an audience that he knew was inclined to engage in violent jihad against those they believed to be the enemies of Islam.  He agreed that, in doing so, he knew that his audience would understand his messages as requests to attack the victims he named, and he knew that his audience was potentially willing and capable to attack those victims.

In connection with his guilty plea, Chesser agreed that he solicited the murder of the writers of the South Park television show, as well as the murders of his fellow citizens who drew his wrath because they apparently expressed a desire to participate in "Everyone Draw Muhammad Day" on Facebook.   Chesser agreed that he marked them for death for engaging in free expression that he found insulting as well; these victims included a teenager in Mississippi and a young man from Texas depicted in a photo with his parents and a brother, along with the address of his "possible church/school."  As Chesser pointed out for the killers in his audience on the Ansar AlJihad Network, "Just a place to start."  Dkt #32 at ¶ 31.  These facts would have been sufficient to convict Chesser of the violation of Section 373 and 2332 that, in return for Chesser's guilty plea, was *not* brought.

    2.    <u>Count 2</u>

As Chesser admitted in Count 2, he solicited others to leave suspicious packages in public places to desensitize law enforcement authorities to the threat posed by such packages.

He admitted that he did so with the explicit goal of hindering authorities from protecting his fellow citizens from terrorist bombs.  He agreed that he had openly explained that, after law enforcement had become sufficiently "desensitized" to the possible danger of such packages, real explosives could then be substituted.  He agreed that, as he explained to an audience that he believed was interested in killing his fellow citizens, those real explosives could then explode upon being discovered by a law enforcement officer, with the result "[b]oom!  No more kuffar." Dkt #32 at ¶¶ 34, 37, 39.

As Chesser admitted, he posted on the internet information pertaining to the manufacture and use of explosives and weapons of mass destruction, with the intent that such information be used against civilians, law enforcement authorities, and the military forces of the United States in America and overseas.  *Id.* at ¶¶ 33, 36, 38.  He agreed that, with the same intent, he posted the TSA manual setting forth procedures used to prevent the smuggling of explosives and weapon onto commercial airplanes.  *Id.* at ¶ 35. These facts would have been sufficient to convict Chesser of the violation of Section 842(p) that *not* brought in return for Chesser's guilty plea.

### 3.    Count 3

As Chesser admitted in Count 3, he attempted to provide material support to a designated terrorist organization.  *Id.* at ¶ 40.  He agreed that he attempted to travel to Somalia to fight for an organization that he knew was designated by his country as a terrorist organization, and that he also knew considered his country an enemy.  Indeed, he agreed that, in doing so, he brought his infant son with him as "cover." *Id.* at ¶ 49.  He agreed that this attempt was not an isolated or uncharacteristic act; he agreed that, instead, it was undertaken as part of a consistent and longstanding course of conduct that included exhorting others to raise children to support al-

5

Qaeda, help the mujahideen and fight against "disbelievers," as well as distributing the speeches

of terrorist Al-Awlaki's calling for jihad against the United States, and posting on-line the al-

Qaeda manual - - including "Guidelines for Beating and Killing Hostages" - - for the purpose of

aiding would-be jihadis around the world.  *Id.* at ¶ 41-50.

B.    Sentencing

The statutory maximum period of incarceration for Count 1 was five years.  The statutory

maximum for Count 2 was ten years, and the statutory maximum for Count 3 was 15 years.  The

statutory maximum period of incarceration for each of the charges that were *not* brought against

him in return for his pleas of guilty to the charges in the Criminal Information - - the distribution

of information regarding the manufacture of explosives, in violation of 18 U.S.C. § 842(p), and

soliciting murder, in violation of 18 U.S.C. §§ 373 and 2232 - -  was 20 years.

On February 24, 2011, Judge O'Grady sentenced Chesser to 60 months of incarceration

on Count 1 for communicating threats; 120 months of incarnation on Count 2 for soliciting

violent or threatening conduct; and 120 months of incarceration on Count 3 for the charge of

material support to a designated terrorist organization.  The periods of incarceration were

directed to run consecutively for a total period of 300 months - - 25 years.

As noted above, Chesser waived his right to appeal through his plea agreement.  In fact,

he filed no appeal.

On November 30, 2015, Chesser filed a motion to vacate, set aside, or correct his

sentence under Section 2255.  Docket #67.  In essence, Chesser claimed that his guilty plea was

not intelligent because he was unaware of the elements necessary to be convicted under Section

875(c); he claimed that the correct interpretation of the elements of this statute was not available

to him until the Supreme Court decided *Elonis v. United States*, 575 U.S. 723 (2015). *Elonis* held that, as a matter of statutory interpretation, a violation of Section 875 could not be predicated merely on the objective nature of the statement or post; there needed to be proof of the defendant's purpose or knowledge that the statement or post would be perceived as threatening.

On August 21, 2017, Judge O'Grady found that, at the time he entered his guilty plea, Chesser well knew that his words and posts were threatening, and denied Chesser's motion. Docket #88.

In February 2025, the Fourth Circuit granted Chesser's motion for authorization to file another 2255 motion, on the grounds that he made a *prima facie* showing that the new rule of constitutional law announced in *Counterman v. Colorado*, 600 U.S. 66 (2023), and determined to be retroactively applicable to cases on collateral review, *In re Rendelman*, 129 F.4th 248 (4th Cir. 2025), may apply to his case.

Accordingly, in March 2026, Chesser filed a successive motion under Section 2255. This time (as best we can tell), he claims that his guilty plea was not intelligent because the correct interpretation of the elements of Section 875 were not available to him until the Supreme Court decided *Counterman*.

<div align="center">Argument</div>

I.      <u>The Law of Successive Section 2255 Petitions</u>

A successive motion under Section 2255 can be authorized if a federal prisoner makes a *prima facie* showing that a "previously unavailable" "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," entitles him to relief. 28 U.S.C.

<div align="center">7</div>

§ 2255(h).  Accordingly, the only grounds upon which Chesser now can base his successive Section 2255 petition is the new rule of *Counterman.* [1]  Chesser bears the burden of proof by a preponderance of the evidence.  *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

*Counterman* held that, as a matter of constitutional law, violation of a state threats statute required the defendant to have some subjective understanding of the threatening nature of his statements.  In light of Judge O'Grady conclusion in 2017 that Chesser admitted at his guilty plea hearing that he well knew that his words and posts were threatening, Chesser's present motion should be denied as well.

II.    The New Section 2255 Motion Should Be Denied

Chesser's Section 2255 motion can only be based on the argument that his guilty plea for transmitting threats should be vacated because he never admitted facts sufficient to meet the definition of a "threat" for purposes of Section 875, as determined by *Counterman. Counterman* does not affect Chesser's guilty plea, however, because Chesser admitted such facts in response to Judge O'Grady's questions when he entered his guilty plea in 2010.

Even if Chesser had not admitted such facts in 2010, the new rule of *Counterman* still would not help him.  Chesser's guilty plea foreclosed collateral review of the convictions that he admitted as part of a plea bargain in the course of which the government dropped other serious charges of which he was not innocent.  Notwithstanding the lack of factual foundation for his argument based on *Counterman*, Chesser's motion *also* is without merit because a) his guilty

---

[1] In his latest motion, Chesser makes various arguments unrelated to *Counterman.*  Those arguments should be ignored as already decided, untimely, defaulted, and/or procedurally barred, because his authorization to bring this 2255 motion was based solely on the new rule of law announced in *Counterman*.

plea is final; b) he cannot show actual innocence of the Section 875 count; c) he cannot show actual innocence of the other criminal charges that were *not* brought in return for his agreement to plead guilty to the charges in the Criminal Information; and d) he cannot satisfy the legal test for ineffective assistance of counsel.

A.   Chesser's Guilty Plea Foreclosed Collateral Review of the Convictions that He Admitted as Part of his Plea Bargain

As part of his guilty plea, Chesser admitted in 2010 in writing and again in open Court that he communicated threats in violation of Section 875. He had the opportunity to challenge the application of Section 875 to his conduct in 2010, but decided to plead guilty to the charge instead. As part of his guilty plea agreement, he waived any right to challenge the applicability of that charge to his conduct.

Chesser's guilty plea to the charged offenses is final. Section 2 of the Plea Agreement specifically states that Chesser pled "guilty because the defendant [was] in fact guilty of the charged offense. The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt." Even if the facts contained in the Statement of Facts somehow were insufficient to support a conviction for 18 U.S.C. § 875 in light of *Counterman*, Chesser still would be entitled to no relief because he pled guilty and waived any appeal.

Plea agreements work "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Because the need for finality has "special force with respect to convictions based on guilty plea," a guilty plea may be attacked on collateral review only in "strictly limited" circumstances. *Bouseley v. United States,* 523 U.S.

9

614, 621 (1998). Thus, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id*.

A guilty plea is more than a mere confession; a defendant who pleads guilty admits not only that he committed the acts described in the indictment but also that he is guilty of the substantive offense. *United States v. Broce*, 488 U.S. 563, 570 (1989). Having already admitted guilt of the substantive crime and affirmed as true the underlying facts of the conviction, a defendant can no longer re-argue the facts.

As a result, when a defendant files a Section 2255 motion to challenge the validity of a conviction pursuant to a guilty plea, "the inquiry is ordinary confined to whether the underlying plea was both counseled and voluntary. *Broce*, 488 U.S. at 569. This rule holds even when the law later changes in the petitioner's favor, as "the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompanies a guilty plea." *United States v. Archie*, 771 F.3d 217, 222 (4th Cir. 2014). Such post-guilty plea relief due to an asserted beneficial change in law is precisely what Chesser is seeking; *Archie*, alone, requires that his motion be denied.

Chesser's situation is different from that of a defendant who was convicted at trial on the basis of incorrect instructions; at the time of his guilty plea, Chesser *admitted* that he transmitted threats in violation of 18 U.S.C. § 875. The Criminal Information specifically alleged that he knowingly and unlawfully transmitted in interstate and foreign commerce communications by Internet postings containing threats to injure TP, MS, and JG. Dkt. #28. In turn, the Statement of Facts provided that "The parties stipulate that the allegations in the Criminal Information . . . are true and correct." Dkt. #32 at 1.

10

Chesser's situation also is different from that of defendants whose sentences are based on statutes that have been declared to be unconstitutionally vague or otherwise invalid. *See, e.g., Johnson v. United States*, 596 U.S. 591 (2015)*.* Here, Section 875 remains valid; it is only an interpretation of that statute that has changed. As a result, - and regardless of Chesser's admissions before Judge O'Grady at the time of the entry of his guilty plea regarding his intent to threaten - - *Archie* requires that Chesser's petition be dismissed.

    B.   <u>Chesser Is Unable to Show Actual Innocence of the Section 875 Charge</u>

To attack a sentence via Section 2255(h), the law must have changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; *i.e.,* a defendant must show actual innocence under the change in law. *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023). In this case, however, Chesser was not "innocent" of anything with which he was charged.

In *Elonis*, 575 U.S. 723 (2015), the Supreme Court held that 18 U.S.C. § 875(c), prohibiting the transmission in interstate commerce of a threat to kidnap or injure, does not apply to negligent conduct. Rather, Section 875(c) requires proof at least that the defendant was aware of the threatening nature of the communication. Pursuant to *Elonis,* prosecutors can prove the intent element of Section 875(c) by showing that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 575 U.S. at 739.

In *Counterman*, the Supreme Court held that violation of a state threats statute required the defendant to have some subjective understanding of the threatening nature of his statements:

11

> The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another.

*Counterman,* 600 U.S. at 69.  Thus, the issue Chesser raises today is the same as the issue he raised in his first 2255 motion: whether sufficient proof existed that he knew of the threatening nature of his statements.  For Chesser, therefore, the holding of *Counterman* is moot, because *Counterman* requires nothing more for a violation of Section 875(c) than already was required by *Elonis.*

Regardless of Chesser's denial today that he transmitted communications about MS, TP, and JG for the purpose of issuing threats, he admitted to Judge O'Grady in 2010 that he understood his messages to constitute requests to attack MS, TP, and JG.  Under penalty of perjury, Chesser told Judge O'Grady that, when he posted the communications at issue, *he knew that those posts would be perceived as threats*:

| | |
|---|---|
| The Court: | And do you agree that in looking at the information that you put out on those websites, and the nature of that information, that it objectively constituted messages to an audience that likely included individuals around the world who were inclined to engage in violent jihad against what they perceived to be the enemies of Islam? |
| Chesser: | Yes, sir. |
| The Court: | *And also that you understood the messages to constitute requests to attack MS, TP, and JG?* |
| Chesser: | Yes, sir. |

Dkt. #74, at 14 (emphasis added). Just as Judge O'Grady in 2017 found that admission easily to satisfy the requirements of *Elonis,* this Court should find that same admission today easily to satisfy the requirements of *Counterman.*[2]

Chesser could be innocent of Count 1 only if he truly lacked any intent to threaten MS, TP, or JG, and did not understand that his posts would be perceived as threatening. As described above, that obviously was not the case. The threatening nature of his posts was not accidental, but intended. Chesser knew that his conduct would be perceived as threatening. As a result, *Counterman* can have no effect on his guilty plea.

    C.  Chesser is Precluded from Relief Because He Cannot Show Actual Innocence of Serious Charges That Were Dropped in Exchange for His Guilty Plea

Regardless of whether Chesser's admitted conduct constituted an offense under Section 875 even after *Counterman* - - and regardless of whether Chesser defaulted his challenge to the scope of Section 875 by pleading guilty - - Chesser is precluded from relief because he cannot show actual innocence of serious charges that were dropped in exchange for his guilty plea. After all, Chesser pled guilty to a violation of Section 875 in his Criminal Information in exchange for the government's agreement to forego charges against him (and his wife) that were even more serious than the Section 875 charge that he challenges now. As a result, to obtain

---

[2] In any event, there should be no dispute that, in 2010, Chesser *wanted* his communications to be seen as threatening. Filed in connection with Chesser's first Section 2255 petition was the Statement of Facts from the related case against Chesser's Revolution Muslim colleague Jesse Morton, in which was described a phone call between Chesser and Morton on April 21, 2010, that was recorded by the government. In that phone call, Morton approved of Chesser's plan to post the "Clarification Statement" about MS and TP on a particular website because, in Chesser's words, finding it on that website would "scare the kuffar." Dkt. #75-5, at ¶ 40.

relief now, Chesser would have to show that he (and his wife) was actually innocent of those dropped charges as well - - but that he cannot do.

Actual innocence means factual innocence, not merely the legal insufficiency of a conviction or sentence, and where the Government has foregone more serious charges in the interest of a plea bargain, the movant must show actual innocence with respect to those charges as well. *Bousley v. United States*, 523 U.S. 614, 24 (1998); *McKinney*, at 60 F.4th at 197. The applicability of that rule, alone, requires the denial of Chesser's petition.

Other charges that were dropped in exchange for Chesser's guilty plea were at least as serious as the Section 875 offense.  Chesser concedes that, in exchange for his guilty plea, the United States dropped the charge for the dissemination of information regarding the manufacture of explosives, in violation of 18 U.S.C. § 842, as well as the charge for the solicitation of murder, in violation of 18 U.S.C. §§ 373 and 2332  - -  and that the facts supporting those counts remained in the Statement of Facts incorporated into his plea agreement.

In Chesser's own words:

> Chesser was originally accused of distributing explosives information in violation of 18 U.S.C. § 842(p)(2), Doc. 1, but this was withdrawn. . . . Chesser believed he was still facing this charge when he pled guilty . . . [t]here can be no doubt that the threat of this charge weighed heavily on Chesser's decision to plead guilty. . . .  Chesser erroneously believed he was facing solicitation of murder charges which added 60 years to his risk calculus.

Dkt. #75-3, at 33-34.[3]  Chesser was mistaken about being charged originally with a violation of Section 842(p), but he clearly understood that he actually faced indictment on that charge (as

---

[3] In 2013, Chesser filed a complaint for alleged violations of his rights by prison authorities.  *Chesser v. Rivas et al*, No. 3:13cv00456 (S.D. Ill.).  Of particular relevance here, in

well as the solicitation to murder charge) when he entered his guilty plea.  He admitted that his attorneys "showed him an email from his prosecutor listing the charges Chesser thought were in his deal, saying that the prosecutor knew he could not convict Chesser of everything, but that he would convict him of a number of charges."  Dkt. #75-3, at 45-46.

As Chesser explained in a declaration that he filed in connection with other litigation, "Chesser received immunity from 67.5 years of charges by pleading guilty."  Dkt. #75-1, at 3. He wrote:

> I believe that I have an almost surefire 2255 I could file, but I am concerned about reprosecution as to two sections of my deal . . . indicate this could be a breach of my agreement. I could be facing about 100 years of charges.

Dkt. #75-2, at 1-2.  In short, there is no dispute that, in return for his guilty plea, Chesser gained the benefit of not being prosecuted on other, very serious, charges.

Chesser cannot establish innocence of the 18 U.S.C. § 842 charge; after all, the underlying facts for a conviction on such charge remained in his Statement of Facts.  Similarly, Chesser cannot establish innocence of the solicitation to commit murder charge in violation of 18 U.S.C. §§ 842 and 2332, because the underlying facts regarding soliciting murder remained in his Statement of Facts as well.

Finally, Chesser cannot establish the innocence of his wife with respect to aiding and abetting an attempt to provide material support to terrorists, in violation of 18 U.S.C. §§ 2339B

---

2015, he filed a pleading, Dkt. # 179, to which he attached as exhibits a draft of the petition that he intended to file in this district, as well as two declarations.  *Rivas,* Dkt. # 179-1 (Declaration of Chesser); Dkt. # 179-2 (draft Section 2255 petition); Dkt. # 179-3 (Declaration of Chesser). Those documents were filed before Judge O'Grady in 2016 as attachments to the government's opposition to Chesser's first 2255 petition.  Dkt. #75.

and 2.  As noted above, one of the concessions that Chesser obtained for his plea agreement was that his wife would not be prosecuted for her assistance to him in his attempt to travel to Somalia to provide material support to al-Shabaab. Yet, in her own plea agreement, his wife agreed that Chesser should bring their infant son with him to Somalia because doing so would tend to protect Chesser himself.  Dkt. #75-6.  Inasmuch as a very serious charge was dismissed against Chesser's wife in return for his own guilty plea, by the logic of the *Bousley,* he cannot attack now his conviction because he cannot establish his *wife's* actual innocence, either.

> D.    *Counterman* is Inapplicable to Count 2

In Chesser's Statement of Facts, he agreed that he urged others to leave in public places suspicious packages that looked like package bombs because doing so would "inspire fear, disrupt public transportation, and tie up police and bomb squads."  Dkt. #32 at ¶¶ 34, 37.   In pleading guilty to Count 2, he admitted that, in the course of soliciting others to leave those packages, he acted "with intent that other persons engage in conduct . . . that has as an element the use, attempted use, or *threatened* use of physical force against the person of another." Dkt. #32 at ¶ 34 (emphasis added).  In light of his admissions when he entered his guilty plea, he cannot now claim that *Counterman* can have any effect on his conviction on Count 2.

> E.    Chesser Cannot Show Ineffective Assistance of Counsel

"[T]the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995).  Accordingly, the failure of Chesser's lawyers to foresee that the Supreme Court would

narrow the scope of communications that constitute threats under Section 875 cannot constitute ineffective assistance of counsel.

In any event - - and as noted above - - at the plea colloquy in 2010, Chesser *admitted* that he knew that his posts would be perceived as threats. In the face of that admission, there was no reason for Chesser's defense counsel even to contemplate whether the Supreme Court in *Counterman* (or *Elonis*) would later rule that one could not be convicted for negligently making communications that objectively were threatening. Indeed, Chesser would have been convicted on Counts 1 and 2 anyway even under *Counterman* (or *Elonis*). Moreover, had he declined to enter the plea agreement, Chesser and his wife likely would have been convicted of other charges that were even more serious.

"Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). Here, Chesser clearly "reaped advantage from the purchase"; he was convicted of three counts rather than five, and he obtained a sentencing cap of 30 years instead of possible life in prison. Moreover, he obtained favorable treatment for his wife as well. Accordingly, he may not use what he believes is the benefit of hindsight to establish that he would not have accepted the benefits of pleading guilty but for his counsel's alleged ineffective assistance, and that such decision would have been an objectively reasonable one. As Judge O'Grady concluded, "Chesser benefitted significantly from the reasonable and calculated choices made by his attorneys, and he therefore fails to show ineffective assistance of counsel." Dkt. #88, at 28-29. Accordingly, any claim of ineffective assistance of counsel must fail.

17

<u>Conclusion</u>

For the above reasons, Chesser's motion should be denied.

<div style="margin-left:50%;">

Respectfully submitted,

Todd W. Blanche
Deputy Attorney General


_____/s_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th of March 2026, I mailed a hard copy of the foregoing by

First Class mail to:

Zachary Adam Chesser
Reg. No. 76715-083
FCI McDowell
P.O. Box 1009
Welch, West Virginia 24801


_____/s_____
Gordon D. Kromberg
Assistant United States Attorney