UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

1:10cr395 (LMB)

UNITED STATES OF AMERICA,

    Respondent,

v.

ZACHARY ADAM CHESSER,

    Movant.



---

### Reply to Government's Response to the Successive 2255 Petition

---

The government's response takes two approaches to distracting the court from addressing the substantive issues in this case. First, it avoids actually addressing the evidence and the arguments I make, declaring me guilty by fiat without even mentioning the actual elements of my charges, let alone making a rational connection between the facts--even their version of them--and what the law requires the government to prove beyond a reasonable doubt. This is an obvious effort to exploit what they assume to be prejudices against pro se litigants and get the court to rule in their favor on the assumption that the government must be right and a pro se prisoner must be wrong. Second, it makes five arguments that one thing or another bars the court from addressing some or all of the substance of my claims. Without exception, these arguments are barred by Supreme Court and Fourth Circuit precedent or they are unsubstantiated by the record in this case. As long as the court fairly and objectively reads the motion and supporting memorandum I filed, then the result dictated by this case is clear.

    I will first address the arguments against reaching the substance of this case, and then I will briefly point out a few details respecting the substantive issues, largely to list what was not disputed.

    I.    None of the alleged forgone charges the government cites bar consideration of my claims.

    In United States v. Adams, 814 F.3d 178 (4th Cir. 2016), the Fourth Circuit addressed three issues in the case of a 2255 petitioner who had pled guilty, waived their right to collateral attack, and received immunity from five more

PAGE 1

serious forgone charges. First, it held that actual innocence claims overcome any waiver of right to collateral review. Id. at 182. Second, it held that the requirement in Bousley v. United States, 523 U.S. 614, 623 (1998), that someone who collaterally attacks their guilty plea as not knowing and intelligent based on a procedurally defaulted issue must show actual innocence of more serious forgone charges was limited to forgone charges based on the same underlying conduct as the challenged charge, meaning the petitioner did not need to show innocence of the five forgone charges in his case. Adams, at 183-84. Third, it held that the government would be violating his due process rights if it then charged him with those forgone charges after he prevailed. Id. at 184-85.

The government's arguments about how my waiver supposedly limits my claims is addressed by Adams, and Adams establishes that, at most, the forgone charge of soliciting acts of terrorism transcending national borders (not "murder," as the government keeps trying to claim), in violation of 18 U.S.C.§§ 373 & 2332b, satisfies Adams. This charge is based on the same speech as the threats charge in Count One. The government has not even attempted to dispute my arguments that the evidence (or even the allegations) satisfies the elements of the incitement test under Brandenburg v. Ohio, 395 U.S. 444 (1969), nor the transnational conduct elements of the predicate. I clearly show my innocence of this charge in my motion and memorandum. Doc. 111 pp. 17-20. The government doesn't even get the predicate for this charge correct, misleadingly calling it "murder."

The government's argument that I must show my wife is actually innocent of aiding and abetting my material support charge, Gov. Resp. pp. 15-16, is clearly barred by Adams. Similarly, while the facts underlying the alleged more serious forgone charge of distributing bomb making information, in violation of 18 U.S.C.§ 842(p), are mentioned in the same section as Count Two, even the government's response shows that the conduct underlying this charge would not overlap the conduct underlying Count Two, so Adams also bars this issue. At most, the documents underlying this alleged forgone charge are provided as context for Count Two and are not its conduct.

The § 842(p) charge is also barred by Bousley itself. As the government admits, there is nothing in the record to establish this was a forgone charge. Gov. Resp. pp. 13-15. The government relies upon a 'hypothetical' 2255, which I submitted in a lawsuit, to argue this was a forgone charge. Bousley explicitly limits its holding to charges for which there is "record evidence" they were forgone. Bousley, at 624. A hypothetical 2255 that a pro se litigant filed in order to show standing in a separate access to the courts case based on their inability to prepare a meaningful 2255 without any access to their criminal case file (which the government refused me for the first five years of my incarceration) is hardly something established on the record in this case.

PAGE 2

Either way, the government still has not specified a predicate felony for this charge. Regardless of which subparagraph this charge is supposed to involve, both require a "federal crime of violence" as a predicate. The elements of that charge have to be fully satisfied for me to be guilty. This problem is exacerbated by the fact that most predicates a prosecutor would have used back in 2010 were invalidated by the Johnson-Dimaya-Davis line of cases. The most basic principle of due process is the presumption of innocence. The second most basic principle of due process is that the government must accuse a person of an actual crime. Either of these principles is sufficient to find I am innocent of this charge. The government has not demonstrated that I actually received immunity from a genuine crime in exchange for pleading guilty.

II.    Every argument I made is related to Counterman v. Colorado.

The government makes a misguided and unsupported assertion that 28 U.S.C. §2255(h) bars any argument not related to Counterman v. Colorado, 600 U.S. 66, 216 L. Ed. 2d 775 (2023), in my successive 2255. Gov. Resp. p. 8. It then includes a footnote that claims, without explaining how or citing any authority, that some of my arguments are not related to Counterman and should be considered barred by a number of principles. Gov. Resp. p. 8 fn. 1. This is not an accurate understanding of the way the gatekeeping provision of 2255(h) works, the Fourth Circuit already authorized these arguments, and, in any case, all of my arguments are directly related to Counterman. The court could easily deem this undeveloped argument waived, but the law, the record, and a binding Fourth Circuit order all require rejecting this position anyway.

A.    28 U.S.C. § 2255(h) does not limit one to arguments based solely on the case that satisfies its gatekeeping provision.

It isn't clear which arguments the government is referring to, but one can infer which ones they are based on how terrified they are of even mentioning Brandenburg, the predicate of Count Two, the definition of a true threat and things like this. If this is the case, then their position is clearly barred by the Supreme Court and the Fourth Circuit.

In Bowe v. United States, 2026 U.S. LEXIS 4 (2026), the Supreme Court held that the petitioner could refile a previously raised claim in a successive 2255, where United States v. Davis, 588 U.S. 445 (2019), was the case that satisfied the gatekeeping requirement of § 2255(h). This decision was also based on how United States v. Taylor, 596 U.S. 845 (2022)--which could not satisfy the gatekeeping requirement--likely invalidated the other grounds on which the petitioner might have been found guilty. Taylor is a statutory case that held attempted threats do not satisfy elements clauses like the one in 18 U.S.C. §373. My own case is clear proof that it cannot serve as

PAGE 3

a grounds for satisfying 2255(h). Even though I correctly argued this issue in my original 2255, I could not file a successive 2255 when Taylor came out. I had to file a 2241, but then the Supreme Court overruled the case that allowed me to do that. I don't need to make this argument here, although I probably could.

The Fourth Circuit case that was upheld by Bowe is even more instructive. In that case, In re: Graham, 61 F.4th 437 (4th Cir. 2023), the petitioner's claim was legally identical to Bowe's, except that Taylor was only a Fourth Circuit precedent at the time that he used it as a secondary grounds for relief after using the Johnson-Dimaya-Davis line of cases to satisfy 2255(h).

My use of incitement doctrine is even closer to my Counterman arguments than the use of Taylor in both of these cases. On Count One, it flows directly from arguments I make based on Counterman. On Count Two, the Counterman elements are actually couched within incitement doctrine. My case does not depend on United States v. Al-Timimi, 2026 U.S. App. LEXIS 576 (4th Cir. 2026), in the way that the petitioner in In re: Graham depended entirely upon Taylor, and the version of Taylor that was ultimately used in that case was the Supreme Court version, which was decided after the petitioner filed for authorization. When I show that other doctrines add to the overbreadth arguments on Count Two that are based on Counterman, I am actually arguing that a Counterman-based issue is compounded by these other doctrines, which is closer to Counterman than the use of Taylor in these cases.

The government's position is clearly not correct, and the Fourth Circuit's order in this case binds the court one way or the other.

B.    The Fourth Circuit authorized all of my arguments.

While I was forced to rewrite the petition I submitted to the Fourth Circuit, because the clerk did not file my entire petition (so it wasn't fully preserved in PACER) and a full copy did not arrive in my property when I was sent to a lower security prison, I do not make a single argument that the Fourth Circuit did not explicitly authorize when it authorized the petition I submitted. This petition is found at In re: Chesser, no. 24-196, doc. 2-2.

The court can clearly see that I mention the mens rea, actus reus, and incitement doctrine holdings in Counterman, upon which all my arguments rely. Id. p. 6. I show how Counterman overruled Judge O'Grady's holding that the advocacy of violence was proscribable as a true threat and his holding that it was not dispositive when the recipients failed to understand a communication as a true threat. Id. pp. 6-7. I argue that Counterman shows that the advocacy of violence must always be analyzed under incitement doctrine. Id. p. 7. I argue that my speech on Count One had to be analyzed under incitement doctrine, that incitement doctrine protected it, and that the

PAGE 4

forgone charge is defeated by this and by its predicate's transnational elements. Id. I argue Counterman facially

invalidates Count Two on the same grounds my memorandum uses. Id. pp. 7-8. I argue Counterman applies to

Count Two's predicate and that my speech failed to satisfy the incitement test or the statutory elements of this,

in which the Counterman elements are situated as part of a chain. Id. pp. 8-10 (continues beyond introduction).

These were the claims and arguments specifically authorized by the Fourth Circuit's order. The Fourth Circuit

has already issued a binding ruling on whether these arguments are barred by § 2255(h). While the part of my

motion that the clerk actually filed did not cite other cases, the jurists who sit on the Fourth Circuit's bench are

well aware that incitement doctrine and overbreadth arguments necessarily require me to cite cases besides

Counterman alone. My rewritten motion makes no new arguments. While it does update the arguments with

United States v. Al-Timimi, 2026 U.S. App. LEXIS 576 (4th Cir. 2026), this is no different than the petitioner in

In re: Graham updating his motion with the Supreme Court's version of Taylor, and I do not make any new or

unique claims or arguments based on Al-Timimi. I use it for its rhetorical value, a secondary support for my

Counterman argument, and as a summary of the Brandenburg test. It is a substantive case that would not be

barred by Teague, and the government does not argue this.

In any case, all of my arguments are directly related to Counterman.

C.    I do not make any arguments unrelated to Counterman.

The government's assertion that I make arguments unrelated to Counterman is also just wrong.

The first argument I make is that the advocacy of violence is not categorically within the scope of proscribable

true threats. Doc. 111 pp. 7-13. While it is true that I begin by discussing Brandenburg, doc. 111 pp. 9-11, I also

cover how Counterman's actus reus holdings about the definition of a true threat dictates this result and even how

Counterman is technically the first Supreme Court case to issue a holding on the definition of true threats, although

it largely (but not entirely) adopted the language of Virginia v. Black, 538 U.S. 343 (2003), which was making a

statutory interpretation, doc. 111 pp. 11-13. Obviously, establishing the actus reus to which Counterman's mens rea

applies is necessary, so even if this section was not based on Counterman, it would still be necessitated by it. The

government does not dispute this argument in any way, and it continues to rely upon this legally baseless theory of

the case with no citation to authority, nor even a mention of any definition of true threats, so it has effectively

PAGE 5

conceded this issue.

The next section arguing that incitement doctrine would preempt true threat doctrine--because my speech was substantially characterized by advocacy, and that this also means the advocacy of violence cannot serve as the actus reus for proscribable true threats--is based entirely on Counterman. Doc. 111 pp. 13-17. While I use Al-Timimi and the original incitemet cases as support, Counterman is literally the only case that explains the reason for the preemption these cases apply. Moreover, as Al-Timimi, at 19, notes how Counterman even issued a new holding clarifying that the Brandenburg test requires intent (which Counterman clarifies is equivalent to either knowledge or purpose). That holding alone would suffice to find all of my speech was protected.

The government is so afraid of incitement doctrine that it does not even acknowledge its existence. It does not use the words "advocacy of violence," even as the only thing it declares a "threat" is the advocacy of violence. It only even mentions the First Amendment one time . . . in a quotation. It does not dispute these arguments. That, too, is independently dispositive of every issue in this case.

Also, it is obvious that Brandenburg controls the §373 charges, including the forgone charge, and the government does not dispute this. The forgone charge is not a threat charge, so Counterman isn't particularly relevant to it (except that it clarifies the incitement mens rea and would demolish any attempt by the government to argue my speech was proscribable as some other category like solicitation).

The government does not make a single nonfrivolous argument that I might be guilty of Count Two. Other than declaring me guilty by fiat and arbitrarily declaring Counterman does not apply, it has no case at all. It does not even mention the existence of a predicate for this charge, let alone cite its statutes, let alone note its elements, let alone make a connection between them and the facts. Gov. Resp. p. 16. Instead, it flees from every single point I made in hopes this court, too, will declare me guilty by fiat. And it desperately hopes its unsubstantiated footnote on page 8 will carry the day.

However, the Counterman elements of Count Two occur in a predicate which also has a predicate. They occur in the middle of an elemental chain where each element's meaning is impacted by the others, as my memorandum shows. Doc. 111 p. 27 (and this is just a summarized version). The Brandenburg elements and hoax elements have to be satisfied with respect to the Counterman elements, and the Counterman elements have to be satisfied with respect to the elements of the threat statute's predicate: §1992(a)(2). To say these issues are unrelated to Counterman makes no sense. They depend on Counterman and Counterman depends upon them in this context.

PAGE 6

Similarly, while I divide the facial overbreadth argument up into its independent pieces and some of those pieces do not independently implicate Counterman, the point I am making is that they combine in a way that compounds and implicates Counterman and also that Counterman makes clear that this compounding aspect makes this charge more problematic, not less, by barring the sort of analogies some courts used to extend proscribable categories in the past. Doc. 111 p. 40. Also, an overbreadth challenge is fundamentally about weighing the proscribable speech the law punishes against the protected speech that it chills or captures within its sweep. Just like how the petitioners in Bowe and In re: Graham used Taylor to bolster their argument that the Johnson-Dimaya-Davis line of cases established their innocence, I rely upon other doctrines and cases to bolster an overbreadth challenge that is based on Counterman. Counterman is probably sufficient, but this charge is uniquely problematic from a First Amendment perspective. Given that the government does not even defend against the exclusively Counterman-based arguments, it doesn't really matter that there are other grounds presented to strengthen the overall claim.

In any event, this section is replying to an undeveloped argument in a footnote in the government's response, which cites no authority whatsoever and does not even specify which arguments it claims to be barred (because the government is terrified of the court actually reading those arguments). The court would be right to deem this point waived for lack of adequate development.

III.    Judge O'Grady's order denying my original 2255 is overruled and nonbinding either way.

The government's next effort to prevent a substantive ruling is to argue that the court should blindly defer to Judge O'Grady's order based on Elonis v. United States, 571 U.S. 723 (2015). While it is true that if Judge O'Grady and I got the actus reus for Elonis correct in the original proceedings, this would at least be a relevant consideration on Count One, Judge O'Grady's ruling is clearly overruled by Counterman. Judge O'Grady's order is based entirely on two incorrect holdings. First, he held that the advocacy of violence was categorically a true threat, so my knowing advocacy of violence satisfied the Elonis mens rea. Doc. 88 pp. 15 & 18-19. Second, he held that the fact that my actual recipients did not understand my speech to be a true threat did not mean that my speech was not a true threat. Doc. 88 p. 17. This latter holding was as explicitly overruled by Counterman's "substantial risk" test as one could imagine, which I note in my memorandum, doc. 111 p. 3. In fact, this is independently dispositive, and the government fails to dispute this legally or factually. Also, as my memorandum covers at length, Counterman shows that the advocacy of violence cannot serve as the actus reus for a true threat and that incitement doctrine would control even if it could. Doc. 111 pp. 3 & 7-17. The government does not say one word disputing these arguments

PAGE 7

that Judge O'Grady's holdings on the actus reus were overruled, so it cannot contend that his holding that I knowingly did something that does not satisfy the actus reus elements of my charge have any weight at all. And it also does not dispute that incitement doctrine would control even if Judge O'Grady's understanding had been correct, nor does it argue that my speech might have satisfied the Brandenburg test.

The government makes no meaningful argument on Count Two. Elonis was a statutory case that did not address the statutes at issue in Count Two (as I conceded in those proceedings). Judge O'Grady's Elonis holdings have nothing to do with the claims on Count Two. His ruling on Count Two doesn't address the issues I've raised here and appears not to have understood my charge.

In any case, the standard of review for a statutory actual innocence claim is the challenging "no reasonable juror" standard. Bousley, at 623. Because this motion is making a First Amendment claim, both the facts and the law are subject to de novo review. Al-Timimi, at 15-16. There is no reason constitutional questions would receive a lower standard of scrutiny in the postconviction context, especially since many constitutional rights cannot even be litigated outside of that context.

IV.    Pleading guilty does not suffice to overcome the government's inability to even allege--let alone prove--that my speech was not protected.

It is telling that the government chose to lead with an argument that it does not matter if it cannot show that I broke the law or even show it is capable of alleging I broke the law and that my speech was unprotected, instead of leading with an argument that I might actually be guilty or at least have pled guilty to something that was actually against the law. And it is also telling that the government has chosen to lead with an argument that is so clearly barred by Supreme Court and Fourth Circuit precedent and even looks poised to be further gutted by the Supreme Court this summer. Hunter v. United States, no. 24-1063. The court should not wait on Hunter, because it is not likely to impact Fourth Circuit precedent in a way that would lead to a different result in this case. The government's lead argument is that pleading guilty bars any claim of actual innocence.

Ironically, the government cites Bousley in making this point, when Bousley is, from beginning to end, about how a change in statutory interpretation allowed a petitioner who pled guilty to challenge his conviction, and it actually held that he had no choice but to show he was actually innocent. Also, Adams directly rejects the government's contention that a waiver can bar a claim of actual innocence and even goes well beyond this. Id. at 182. While this holding is not under scrutiny in the Supreme Court, the Court is currently considering expanding the exceptions to these types of waivers beyond the one that applies to this case, so it's odd the government would lead with

PAGE 8

this argument.

V.    The government's position that only the facial sufficiency of the admissions is relevant has no basis, is clearly barred by Supreme Court precedent, devastates its case even more than the evidence does, and requires this court to consider voiding this case in its entirety for lack of subject-matter jurisdiction.

Because the evidence is so overwhelmingly in my favor and clearly overcomes whatever weight my admissions might carry on the few issues that are actually disputed, the government makes the novel argument that my claims are limited to testing the legal sufficiency of the allegations in the plea colloquy and statement of facts. Gov. Resp. p. 8. For this position, the government cites precisely zero authorities. While this is very clearly the exact opposite of what the Supreme Court held in Bousley, the government apparently failed to notice just how much its position devastates its case or that this requires the court to evaluate whether it had original subject-matter jurisdiction, which opens the door to voiding this entire case ab initio as a nullity. Not even my material support charge has sufficient legal allegations. I will cover this, but first let us deal with what the law actually says.

Bousley dealt with a substantive change in the law that impacted a charge to which the petitioner had pled guilty, and it held that he had to show actual innocence to overcome procedural default and that this claim had to be reviewed "in light of all the evidence." Id. at 623 (internal quotation marks omitted). While it is usually the government who cites this idea, Bousley held that "'actual innocence' means factual innocence, not mere legal insufficiency." Id. And it even held that "the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy." Id. at 624.

The reason the government has taken the opposite of a prosecution's typical position and is insisting on the opposite of what Bousley says is that the evidence is overwhelming. It is more than sufficient to overcome the weight given to admissions in guilty pleas, especially when most of those admissions were not sworn. While I can, unlike the government, admit I was wrong and that paragraph 2 of my plea agreement does make the admissions in the Statement of Facts actual admissions, they remain mostly unsworn. Other than the legal allegations that merely characterize the factual allegations, I do not dispute much of what is in my Statement of Facts. I have, in a few cases, proven objectively that these admissions are not accurate or are intentionally misleading, which discredits them severely. I have also provided plenty of supporting evidence for the few remaining areas in which there is a dispute and this is enough to overcome the weight of these admissions. It is more likely that I admitted

PAGE 9

to falsehoods then than that these admissions were true based on the evidence. Also, in every one of these cases, I point out that classified evidence could objectively prove what I am saying. In a few of these cases, I challenge the government to produce my actual postings and words so the court can objectively evaluate what I have said, such as in the case of the 'Desensitizing Federal Agents' posting that forms the entire basis of Count Two and the 'Tracking Everyone Draw Muhammad Day' posting that forms the JG portion of Count One. The fact that the government has refused to meet this challenge seriously damages its credibility and the credibility of the Statement of Facts, while it bolsters my own credibility. Most of the evidence I submitted is objective or it is highly probative of the points I was making. It would be absurd, for example, to take my admissions over the objective proof of what I actually said. The motion and memorandum speak for themselves.

The government has not argued that the admissions suffice to overcome the evidence in a usual sense, and it has not disputed any of evidence or what I claim it establishes. Rather, the government's position is based entirely on an incorrect and unsupported legal argument that the court cannot consider the evidence. It can. And that is enough.

But the government's position would only help my own case anyway.

The government does not dispute the arguments I make respecting Count One and its forgone charge: that the advocacy of violence is not the actus reus for true threats, that the actus reus is something that poses a substantial risk its audience would understand it to seriously express the speaker means to commit an act of unlawful violence, that this is what I have to have consciously disregarded, and that, in any event, incitement doctrine controls the case. Technically, the lack of any allegations pertaining to the incitement test would be the correct way to resolve this case on this point, which also takes care of this count's forgone charges (even the less serious solicitation of stalking charge). However, the admissions only cover a legal allegation claiming I knowingly communicated something that contained a "threat" but without specifying that it was a "true threat" or a serious expression that I intended to do unlawful violence. It does not allege anything I said posed a substantial risk of being viewed in such a way. It does not allege I consciously disregarded anything at all. Instead, the government continues to rely upon an allegation in my Statement of Facts--which is not even an admission based on personal knowledge--that my postings objectively might have been understood by some as requests to attack others. Gov. Resp. p. 12. That just is not the actus reus for true threats, so it doesn't matter what my mental state was with respect to this allegation, and it does not satisfy the incitement standard either. It is also worth noting that the

PAGE 10

government relies upon the plea colloquy transcript instead of the actual Statement of Facts, which records this section in a way that makes it look like I admitted I understood my speech as calling on others to attack people, when it was actually the idea that others might have understood my speech that way which I was admitting. In any event, even this version misses the point.

With respect to the more serious forgone charge, the incitement elements and the transnational elements of the predicate are entirely missing. With respect to the less serious forgone charge of soliciting stalking, the the incitement elements are missing, the Counterman elements are missing, and every single element of the predicate is missing.

Count Two suffers from the same catastrophic flaws. The incitement elements are missing, the Counterman elements are missing, every single element of the predicate is missing, and there isn't even something that would debatably satisfy any of these elements. Which is why the government does not argue that there is anything that would debatably satisfy any of these elements. The motion and memorandum communicate this clearly. Simply declaring Counterman inapplicable to Count Two with no explanation at all whatsoever is hardly sufficient.

The government's substantive case is this: If a veteran attorney says things with no legal relevance in a confident and contemptuous tone while italicizing things that do not actually have any basis nor say what it claims they say, then the court will not bother reading a pro se prisoner's filings and will declare them guilty by fiat.

The government's legal sufficiency argument would also be fatally implicated by the overbreadth arguments. Indeed, the government actually makes an argument to this effect, in trying to say that the only way I can argue actual innocence is if the statute was invalidated, like in the Johnson-Dimaya-Davis line of cases. The government does not dispute these arguments or acknowledge their existence.

The government's contention is also fatal to its forgone charges arguments. The allegedly forgone §842(p) charge isn't even mentioned, and the first step of sufficiently alleging something is to mention it. And the factual allegation that somewhat tracks this statute's language makes no mention of a predicate, nor of anything that resembles any statute.

My wife's forgone aiding and abetting charge is fatally implicated by the failure to allege in either of our cases that we knew Al-Shabaab was a designated foreign terrorist organization. 18 U.S.C. §2339B has two distinct mens rea elements the government must prove to establish a crime. The first is a traditional knowledge element that the person knew they were providing the material support to the organization. The second is that they must know

PAGE 11

that the government designated the organization a foreign terrorist organization. And this is missing completely from the record in this case. As is any alternative to this element.

The court would not be wrong to throw out this entire case for lack of subject-matter jurisdiction, as alleging a violation of federal law is the minimum for establishing jurisdiction. Not even one charge is properly alleged. The government opened this Article III door, not me.

VI.    The motion and memorandum are sufficient on the substantive claims.

The government's strategy of avoiding the substantive issues I actually raise is so extreme that they allege that I made a Fifth Amendment claim, Gov. Resp. p. 7, and include more than a full page randomly arguing my counsel was not ineffective, id. pp. 16-17. My pleadings are orders of magnitude more clear than the government's. This tactic is dishonest. And I don't think that the First Amendment is such a tiny thing that the government can hide it from the court by holding it behind its back.

The motion and memorandum of law are more than sufficient to address the substantive claims I raised, and I will not relitigate these issues unnecessarily in a reply. However, the government's strategy of not addressing the facts and arguments in my filings, in hopes the court would not seriously read a pro se prisoner's claims so long as the government declares them guilty with assertive language and profuse italicizing of legally meaningless words and phrases, has consequences. Those consequences are that it has conceded numerous issues in a way that would not even preserve them for appeal. These issues are all dispositive. While I do not believe that this court is prone to the kind of manipulation the government deploys here, and I'm confident it does not need me to list these issues to get it to vacate my convictions, it is probably helpful to see the issues the government failed to dispute listed.

The government never mentions the definition of true threats or disputes any of my arguments about what the limits of this category are. The government never mentions incitement doctrine, nor disputes its applicability to any of the charges I mention, nor disputes that it controls Count One. The government never mentions the predicate for Count Two at all, nor does it dispute one single argument I made with respect to this predicate. The government makes an utterly baseless assertion that Counterman does not apply to Count Two, but it does not dispute anything I said about how it applies within the predicate of Count Two beyond that. The government does not dispute my construction of Count Two's predicate. The government does not dispute that Count Two is facially overbroad. The government does not dispute one piece of evidence that I submitted. The government does not dispute that my audience did not perceive true threats, nor does it dispute that Counterman makes this dispositive.

PAGE 12

The government conceded the substance of my claims in hopes the court would not bother to read what I said if it did not take it seriously itself.

CONCLUSION

For the above reasons, this court should grant my motion to vacate Counts One and Two.

Respectfully submitted,

Zachary A. Chesser
Reg. No. 76715-083
FCI McDowell
P.O. Box 1009
Welch, WV 24801

PAGE 13

## CERTIFICATE OF SERVICE

I certify that on this **24ᵗʰ** day of __March__ , 2026, I placed a true copy of the forgoing filing in the mail, with prepaid first-class postage, addressed to:

Gordon Kromberg
Assistant United States Attorney
2100 Jamieson Ave
Alexandria, VA 22314

Zachary Adam Chesser