UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

No. 1:10cr395 (LMB)

UNITED STATES OF AMERICA,

Respondent,

v.

ZACHARY ADAM CHESSER,

Movant.



---

Motion to Reconsider Order Denying Motion to Appoint Counsel

---

I respectfully move this court pursuant to Fed. R. Civ. P. 60(b) to reconsider its order denying my motion to appoint counsel.

If what the court was referring to by relevance was that it wanted to wait and see whether the government meaningfully disputes the more than twenty material facts in my successive 2255, which could be concretely and indisputably proven with classified evidence, in a way that suggests that the disposition of this case hinges on whether my successive 2255's claims about this classified evidence are accurate, then that is not what I am asking the court to reconsider. Rather, this motion is aimed at addressing what might be a lack of clarity on my part in explaining exactly how classified evidence is relevant to my motion at this stage and why it would matter to my two threat-related charges (Counts One and Two), as opposed to only mattering to my material support charge (Count Three), which is not at issue in my motion. In what follows, I explain this with greater clarity, and I offer citations to my successive 2255 where I note how classified evidence would indisputably prove the points I am making.

As a general matter, this is about the difference from being able to show the court my actual words, my actual postings, my actual interviews with the media, my actual emails, my actual mental state in the moment, and my actual audience's actual reactions to my expression. Right now, I am often stuck using a declaration and evidence that partially corroborates what I am saying, such as news articles reporting some of the words in my interviews.

PAGE 1

There is an important difference between subjectively proving something and objectively proving it, and the classified evidence lets me do the latter. It might seem like public advocacy would not involve much FISA surveillance, but the FBI was intercepting and bugging my apartment, phones, emails, and online activity as well as the same for my partner in the advocacy campaign underlying Count One, Jesse Morton, and the government only declassified a tiny portion of the communications relevant to Counts One and Two despite capturing it all.

The court will get the best picture of the kinds of relevant things FISA surveillance captured by looking at the partially declassified communications the FBI discussed in the affidavit charging Morton, which is Exhibit G of my successive 2255. Even though this is incomplete and contains biased and misleading summaries and character- izations and is intended to show Morton was culpable of a crime, it provides compelling proof I lacked the mental states required for incitement and true threats (now that Counterman is law). It shows (1) that I took multiple concrete steps to avoid being misunderstood as threatening or calling for violence, (2) that I believed we had successfully mitigated any risk of such a misunderstanding, and (3) that I had reasons besides threatening or inciting violence for expressing inflammatory language and violent ideas.

Normally, this would be dispositive in a post-Counterman world, but the FBI's biased accounting of these emails and phone calls obviously is not the version that I would want the court to see. The full version is even more exculpatory. Also, as I note on page 31 of my successive 2255, before discussing this affidavit, there were other conversations and emails which are even more compelling, in which I discussed my efforts to make sure threats and calls for violence would not be understood, my reasoning, and my (correct) belief that I had done enough to mitigate such a risk.

Also, as I note at pages 24, 30 & 31, the FISA surveillance captured Morton and I planning nonviolent debate, discussions and protests and engaging in the debate and discussions. Before Counterman, the government's case was based on the idea that our calls for protests, dialogue and debate could be understood as "dog whistles" that called for violence (they argued advocacy was categorically proscribable as a true threat). This evidence would prove, at the very least, that I lacked the mental states required for true threats and incitement with respect to these parts of my expression.

Also, three of the five communications the government uses to argue I communicated threats are partly or entirely classified, and my case depends heavily on establishing what I did and did not say and the fact that there is no threat or call to violence in my words. In the case of the "Tracking Everyone Draw Muhammad Day" posting,

PAGE 2

the entire posting is classified, and the government only declassified a materially false summary. As I note on pages 16 and 20-21 of my successive 2255, this posting was entirely nonviolent, the government's characterization of its context is inaccurate, and the government straight up lied when it told the court that I posted people's addresses, and these are things that could be objectively proven if I could submit the posting itself to the court. In the case of the Fox News interview, the government only declassified a single inflammatory (but technically exculpatory) sentence from its recording of my interview. As I note on pages 16-18, the full classified audio of this interview would objectively prove that my tone was polite and sober, that I had a substantive message I was delivering, and that I took active steps to ensure that my use of violent expression would not be misunderstood as calling for violence or threatening it. Also, with the original posting in this campaign, the government left the two audio recordings that went with it classified, and it only declassified an out-of-context sentence from one of these recordings in a way that is misleading. As I note on pages 16 and 17, while these recordings would show that the speakers (who were not me) spoke favorably about violence in a somewhat analogous context, that context was also complicated by the fact that wars were involved, and they were referring to historical events no more recent than eight centuries ago. They also do not contain calls for violence, nor do they refer to the events at issue in my charges.

One of the most important categories of evidence--one which is almost entirely classified--is all the speech in my campaign in which the government did not find any argument to support its case. The broader context in which speech occurs is one of the most important factors in evaluating it under the First Amendment, and the vast majority of our campaign is classified. The entirety of this speech is exculpatory and would show us engaging in extensive dialogue and debate in polite and substantive ways, which often persuaded initially unsympathetic members of our audience of our positions on the episodes of 'South Park' we were criticizing. It would show us taking extensive efforts to make sure our use of violent expression would not be misunderstood as threatening or calling for actual violence. It would show people reacting to these efforts in a way that showed they accepted our word that we were not threatening or calling for violence. It would also show that the inflammatory speech upon which the government bases its case was only a tiny portion of a much larger campaign about American foreign policy, imperialism and the freedom of speech. If the court could see these emails and hear these online discussions and phone conversations, it would go a long way toward showing why our actual audience did not perceive true threats or incitement and why I did not believe my speech to pose a substantial risk of being understood in either

PAGE 3

of these ways. I note this on pages 23-25 of my motion. Aside from a single email-based interview and a few sentences from our interviews captured in news articles, these communications are all classified.

On Count Two, the classified evidence is less voluminous, but it is even more vital. Of the postings in my Criminal Information, only the 'Desensitizing Federal Agents' posting actually advocated anything at all. That posting is not in my unclassified discovery. Nor is its metadata. There is some reason to believe that the FBI never actually had a copy of this posting and that this charge was based entirely on a tip from a private investigator, but the idea that the government was this sloppy in a national security investigation is not the most likely scenario. It is reasonable to presume this material is classified if it is not in the unclassified discovery.

The metadata would prove that the total views on this posting were so low that one could not reasonably infer that someone sympathetic to its message would have read it, as the clicks could be accounted for by me, the private investigator who tipped off the FBI, and by the FBI agents who viewed it. This charge is a bit unusual, as it couches the threat element within a solicitation charge's predicate, and this lack of viewership is independently dispositive of the likelihood prong of the incitement test and is highly exculpatory with respect to the intent elements of that test and 18 U.S.C. § 373, within which the Counterman elements are couched.

The actual posting would also show that I wrote just a few sarcastic paragraphs that were not likely to incite anything at all, that they were abstract advocacy that was not even serious, that the actual action I advocated was indistinguishable from the everyday activity of leaving bags and other similar objects in public places that billions of people engage in on a daily basis, that I did not suggest doing anything to make them resemble bombs, that I did not suggest reporting them or drawing attention to them, that I did not mention anything at all about mass transportation or railroads as the predicate would require, that the manner of placing objects in public that I suggested would not achieve anything particularly close to the predicate for this charge, and that what I advocated was nowhere near something for which any of the Counterman elements could be inferred, as it lacked clarity with respect to those elements and also lacked the kind of specificity where one could infer those elements beyond a reasonable doubt, regardless of how those elements apply in the context of a predicate offense (assuming the charge is not facially invalid).

I cover all of these things on pages 35-36 of my successive 2255.

PAGE 4

In previous filings, the government's responses respecting this charge have relied on ambiguity and avoiding any mention of the statutory and constitutional elements of this charge--especially its predicate, the existence of which they did not even acknowledge a single time. Not only would this actual posting support my case more than the vagueness of the government's allegations or my declaration, but it would force the government to stop avoiding the issues and articulate whether it actually believes there is a rational connection between my actual words and the statutory and constitutional elements of my charge and what those connections might be.

This, of course, is only the material of which I am aware. The norm with classified information is that one would tend to have little idea of what it actually contains. Still, there is a good deal of classified evidence which I know would support my claims even as things stand.

When the court reads my successive 2255, it is going to encounter all of these things. I wanted to clarify that now, in case this would change how the court views the relevance of classified information at this stage and that would impact how it chooses to manage the case. If all it meant was that it wants to wait to see if the government disputes these facts in a way that could affect the disposition of the case, that is another matter. If it thinks that having this evidence up front in my initial filing is most likely to be a more efficient way to proceed in this case, however, then it should reconsider its order denying counsel before the government files its response, as that would prevent potential redundancy and relitigation.

Respectfully submitted,

Zachary Chesser
Reg. No. 76715-083
FCI McDowell
P.O. Box 1009
Welch, WV 24801

PAGE 5